All right, once again, welcome. We are, Judge Lagoa and I are very thrilled to have Judge Zingal of the Southern District of Florida sitting with us today and yesterday, and we very much appreciate all of the work that he's put in and his level of preparation for our docket this week. So we just wanted to acknowledge that. Thank you. All right, we have two cases this morning. We will start with Northern Illinois Gas Company v. USIC, LLC. And we'll hear first from Mr. Witzogrueter. Is that right? Your Honor, it's Witzogrueter, yes ma'am. Thank you. Whenever you're ready. All right. May it please the Court, my name is Scott Witzogrueter, and my partner, Gary Toman and I represent the appellant Northern Illinois Gas Company, DBA NICOR Gas Company, or NICOR as it's referred to in the pleadings in this appeal. I'm going to be addressing the substantive, statutory, and contractual interpretation issues at issue here on appeal. Mr. Toman, if necessary, is going to be addressing the jurisdictional issues that were raised by the appellee USIC, LLC. Real brief, this appeal involves the interpretation of a master services agreement or a construction contract, for lack of a better term, that was entered into between NICOR and USIC in 2014. Counsel, I mean, you can spend your time however you'd like, but I think we're pretty familiar with the facts. That's great. I'll just move on to the errors that were committed by the district court that necessitated this particular appeal. It's NICOR's position that the most obvious and egregious error that was committed by the district court was the district court's refusal to sever the duty to indemnify, found in paragraph 9.1 of the MSA, from the duty to defend, found in paragraph 9.1 of the MSA. It should be noted first that everyone, the district court, USIC, NICOR, everyone agrees and has always agreed that the sole negligence exception that's included in 9.1, which would make that provision compliant with OCGA 13-8-2, always applied to the duty to indemnify. The appellee argued that in the motion to stay. Repeatedly, the appellee argued that in the hearing regarding the motion to stay, and the district court ultimately stayed the claims predicated on the duty to indemnify expressly because that duty to indemnify was qualified by the sole negligence language that would otherwise make that obligation enforceable under 13-8-2. As I noted, the fact that, so not only did everyone agree that the language applied to the duty to indemnify, everyone agreed that a result of that language applying the duty to indemnify, that the duty to indemnify should be treated differently from the duty to defend. Leads into the severability argument. As a result of everybody agreeing that the duty to indemnify should be treated differently, the court stayed the claims predicated on the duty to indemnify. That's a roundabout way of saying that everyone knew that these obligations included in the same provision were separate and distinct. They were separate and distinct not just from a practical or a logical manner, but they were separate and distinct from a textual manner too. That textual manner arose out of the fact that the sole negligence language expressly applies to the duty to indemnify. Second, as a result of the inclusion of the sole negligence language in paragraph 9.1 as it applies to the duty to indemnify, it is clear that before any lawyer or any court ever reviewed paragraph 9.1, the parties who entered into this contract at issues here, at issue here, clearly evidenced an intent to segregate the duty to indemnify from the duty to defend. They clearly evidenced an intent at the very least to have the duty to indemnify be compliant with 13-8-2. That intent is obvious. They included the sole negligence language related to the duty to indemnify precisely because 13-8-2 exists, and they wanted to be compliant with that. Accordingly, the intent of the parties when they entered into this contract was to comply with 13-8-2. Otherwise, they would have included that sole negligence language in there. The district court's ruling striking the entirety of paragraph 9.1, including the duty to indemnify, expressly disavows the parties' intent. It can be read no other way. In effect, what the district court did when it determined that the entirety of paragraph 9.1 violated 13-8-2, they ignored the final sentence of the provision. They had to, because if they didn't ignore the final sentence of the provision, any logical conclusion would be that the duty to defend, the duty to indemnify, forgive me, was subject to the sole negligence exclusion. You can't do that. You can't simply ignore the last sentence of paragraph 9.1 in order to find a provision does not comply with a statute in the state of Georgia. It's not allowed by contractual interpretation, and it's not allowed by Georgia public policy. Georgia public policy says two things with respect to this. One, you have to effectuate and give the intent of the parties its due weight and take the totality of the provision into consideration when you're determining whether or not there's a violation of a particular statute. And number two, you're supposed to exercise extreme caution. When finding that a duly and freely executed and agreed to contract can violate Georgia public policy. I would suggest to you that the district court's decision to ignore its entirety of the last sentence of paragraph 9.1 not only is an error, but is a violation of the Georgia public policy to be cautious when finding that something violates public policy. In short, by avoiding the entirety of paragraph 9.1, not just that which arguably violates 13-8-2, the duty to defend, the district court completely ignored that final sentence. They can't do that. Third, or my third point with respect to the severability of the duty to defend from the duty indemnify, by disavowing the totality of paragraph 9.1, the court didn't just ignore that last sentence of 9.1. They ignored in its entirety paragraph 17 of the MSA. Paragraph 17 includes the severability provision, and that severability provision states as follows, if any provision of this agreement is found by a proper authority to be unenforceable or invalid, such unenforceability or invalidity will not render this agreement unenforceable or invalid as a whole. Rather, this agreement will be construed as if not containing the particular invalid or unenforceable provision or portion thereof. That's a significant language in paragraph 17, or portion thereof. It states that not only are specific provisions severable from the MSA if they violate public policy, certain portions of provisions are severable if they violate public policy. By completely ignoring that portion of paragraph 17, the district court erred by not giving its effect. So, in effect, what the district court did was two things. Completely ignored the last sentence of paragraph 9.1, the sole negligence exception, which makes the duty to indemnify at a minimum compliant with 13-8-2, and completely ignoring paragraph 17, which states that if any portion of a provision is severable, then that can be ignored by the courts and the parties as well. Paragraph 17 is significant not just because it includes that language or portion thereof. Paragraph 17 provides the best distinction possible with respect to this particular provision that's at issue here versus the ones that were cited by USIC in its responsive brief. They cited a lot of cases saying that, you know, courts have reviewed severability provisions in the context of a duty to indemnify and found that those severability provisions don't apply. In every one of the cases cited by USIC, the severability provisions that were being discussed didn't have the language that we have here, didn't have the portion thereof language, which would grant not only the courts but the parties the authority to not simply ignore a single provision, but to ignore portions of a provision in there. The cases against severability that were cited by USIC all involved duties that were integrated or intertwined, as the cases say. And those cases give us a lot of insight about what the courts mean when a provision is integrated or intertwined. The argument being made by USIC is that you can't sever the duty to defend from the duty to indemnify because it's all in one big provision and the two are intertwined or integrated. First of all, as I noted earlier, the cases that discuss those don't have the severability provision which allows us to segregate or sever a portion of the provision. Secondly, and most importantly possibly, is that those cases don't involve a situation in which the parties clearly express an intent to draw a distinction between the two duties. The parties did that. They did that practically, they did that logically, and they did that textually. How do we know they did that practically and logically? Because USIC asked the court to stay this action based upon the very language that they're now asking this court to ignore. They asked the district court to stay the duty to indemnify because it was modified by the sole negligence exclusion, and the district court granted them that request. So the district court and USIC always drew a distinction between the duty to indemnify and the duty to defend. Intertwined, as in the case of a defense of an indemnity obligation as provided by the court, means nothing to distinguish when one applies and the other does not. That's what it means. We don't have this here. We have language that provides you guys the opportunity to distinguish between the two. That language is the very last sentence, paragraph 9.1. So I'm out of time. I wanted to address those issues. My partner, as I noted, Gary Thoma, is going to address the jurisdictional issues. Thank you, counsel. Mr. Thoma. May it please the court, Gary Thoma for NICOR. There are two alternative reasons why the motion to dismiss this appeal was properly denied by the motions panel. First, is the motions panel correctly held? The objections filed by NICOR in April of 2019 are properly considered to be a tolling motion under Rule 59, even assuming, arguendo, that there was actually a final order entered. But second, and more fundamentally, if the court addresses that final order issue, the oral ruling by the judge was not a final order. I think under the pure oil case, as well as by the expressed terms of what the judge said, he didn't say, as in these other cases, that this is his ruling and there will be an explanatory ruling later. He said, I need additional submissions from the parties, and then I will issue an order. So I think by the terms of that, it's not a final order, and a pure oil, I think, is directly on point. Thank you. Thank you, counsel. We'll hear next from Mr. Helms. Please. May it please the court, David Helms on behalf of USIC. In this appeal, NICOR does not seek appellate review of a summary judgment ruling. NICOR is seeking an appellate do-over of its litigation strategy before the district court until the court entered summary judgment against it. In the district court, NICOR's original counsel put all its eggs in the basket of arguing that the duty to defend was triggered by mere allegations of anything related in any manner to USIC conduct. That allowed NICOR to pursue the duty to defend claim aggressively and avoid a stay of that while the underlying cases were pending. I will tell you, I think there's a problem for NICOR on the duty to defend, because otherwise, if we construe it the way that's being suggested on appeal, even setting aside the issues of whether they're raising it for the first time now and whether that's permissible, although I think it may be, but even setting that aside, the problem, I think, is that it makes that last paragraph of Section 9.1 surplusage. So, I mean, for me, the bigger issue is the severability issue. I think you may have a problem on the severability issue, and I want to give you an opportunity. And by the way, we haven't discussed the case, so I don't know what my colleagues think. I might be outvoted, and you might change my mind. So I wanted to give you the opportunity to address the severability issue. Certainly, Judge. Well, the first problem with the severability issue is that it was never presented to the district court. They did not ask for this lesser included offense, so to speak, because they chose an aggressive move with this. But in fairness, the way that it worked out, the order from the district court, there was not really an opportunity for them to address the severability issue. That came out in response to the final order, or however we want to describe it, from 2021. I mean, there wasn't really an opportunity to address it, as far as I can tell. I would disagree with that, Judge. When we move for summary judgment on all claims, we move for summary judgment on all claims. The record's very clear. The judge entered the stay order indicating that we were going to be challenging it in its entirety. At the stay hearing, we explained that's what we were doing. Our briefing was very clear that we were attacking it in its entirety. At that point, the response, when we are arguing that the entire provision is invalid, then they absolutely had an obligation to say, wait a second, the whole provision isn't invalid. At most, the duty to defend would be invalid, and you sever that away. Now, they didn't do that because the duty to defend was a very significant issue in this case because that would allow them to confront that issue prior to the end of the underlying case where ultimately the parties likely would settle amongst themselves, and the duty to indemnify may not ultimately be implicated. But the duty to defend, if they got a finding now in their favor, was significant. They were not willing to make that argument to give up, to give the district court a path of less resistance to sever it. Now, I'll also say that, and so the fact that they didn't raise that in summary judgment is significant and does constitute a waiver of it, and there was a tactical reason to do that. It doesn't, I don't think you can say it constitutes a waiver. Your argument is that it constitutes a forfeiture, right? I mean, they didn't expressly say, we are choosing not to press this argument, right? Even as a forfeiture judge, it wouldn't meet the Campbell standards. There wouldn't be an exception that would justify confronting that issue on appeal. But I'll get to the merits of the severability issue because SunTrust and A&B Properties govern this, and they very clearly hold that you can't strike individual words from a provision. They say the concept of severability. What about the language that is in the contract that your client signed, and I think it's section 17, that has an express severability provision, which talks about even if a provision or a portion of a provision is held to be invalid, the rest of it shall continue to govern. SunTrust also involved a severability provision, also another case part of the law. But what was the language of the severability provision that SunTrust? It said any part, any part of the contract. So it's not the same thing, right? I mean, any part of the contract is a little bit less clear about whether it's referring to a section of the contract or a portion of a section of the contract. Here, the language is a provision or a portion of a provision, which is very express and clear that it's talking about less than an entire provision, right? The Georgia courts follow the Georgia civil code dealing with severability, and I do not think that under the SunTrust case that it would allow that severability provision to kick in, because in that case, it wasn't just, it doesn't matter if it's separate sentences even. In SunTrust, the two provisions were a jury waiver and a class action waiver. Well, what would your position be? I mean, I guess what would be the point of having that severability provision in the agreement? Because that could save it if a separate provision in the contract, if it was set out as a separate provision, that could evidence an intent. And in Barton Malone, the court confronted the exact same situation here, where the provision, the duty to defend and the duty to indemnify fall within something called indemnification. That's the title of this provision. And the duty to defend is not separated out. It is invoked in the exact same sentence even of the duty to indemnify. And where SunTrust wouldn't even parse out, SunTrust easily could have stricken one sentence because it said no jury trial waiver, no class action waiver. They could have stricken the no jury trial waiver and kept the class action waiver or vice versa very easily textually. But they said we do not do that under Georgia law. And, well, in Barton Malone, it was applying Florida law. But even in those contexts, the severability provision, there's sound public policy not to follow that because it would give that either the legislature has determined that this provision is void, the duty to defend provision is void because of its scope. And in that circumstance, the party, NICOR, should, as the drafter of the agreement, create a separate provision if they're worried about that being stricken. And no case anywhere in the United States has stricken a single word within a provision. Within the provision. And that's what you would have to do here. You would have to strike a single word from the first sentence of the provision, not just striking a separate paragraph or a separate sentence. What difference does it make if you can do that and it makes sense? And that's how you yourself, meaning your client, of course, treated it. I mean, your client sought to stay the claims with respect to the duty to defend while proceeding on the duty to indemnify. I mean, it seems like the way, vice versa. Thank you. Friday, end of a long week. I appreciate your grace. In any case, you understand my point is that your client treated these provisions during its litigation as severable, as being able to understand that they were distinct in concept and litigate differently, choosing to litigate differently with respect to each of them. So, I mean, usually when you find that you can't do severability, it's because if you try to sever one portion, it actually affects the other portion. And here it seems like your argument is more based on the notion, sort of a technicality, although I don't think it turns out to be an effective technicality, that it's one word in a longer provision as opposed to an entire part of the contract itself. But the problem with that, as we've discussed, is paragraph 17 and the specific language of paragraph 17, which provides for severability of not just a provision but a portion of a provision. So maybe could you address why it's inextricable in that the concepts themselves, one won't, if you sever out the duty to defend, then you can't, it doesn't make sense to indemnify on the rest of it. It would encourage parties to try to write a provision for maximal enforcement, seek maximal enforcement, and then have the court of appeals fix it for them later. And that is not what the doctrine of severability is intended to do. And we were very clear in all of our briefing, in all of the hearings, that we were not, this isn't a technicality that they added the duty to defend within this entire provision. They were trying to aggressively invoke it based upon mere allegations. And if they recognized that that was a risk, then they should have set it out, at least in a separate sentence. And even then, SunTrust would say that the courts are not going to start rewriting parties' contracts for them to make them legal. But so, but what I'm understanding, maybe I'm misunderstanding. I'm not understanding you to say that there is a practical or logical problem with there being an inability to indemnify while not having a duty to defend. So I just want to make sure that that's your position and I'm not misunderstanding that and it's based on something else. Well, actually, I think there is a practical problem because it shapes the party's behavior prior to an appeal. When the courts start rewriting individual sentences of an agreement, the parties, that does affect the parties' behaviors. And in addition to that. I'm sorry, but that's, okay. That's okay. What I'm saying is, first of all, I mean, that's your characterization that the court would be rewriting it. You all both signed a contract that says a provision or a portion of a provision. So just setting that aside, that is a general kind of argument that, you know, it shapes parties' behaviors. I'm asking specifically with respect to the duty to defend and indemnification. How does it affect, if we sever that, how does it affect, how does it make it impractical to provide indemnification if there's no duty to defend? Well, practically, you can provide indemnification ultimately at the outcome of the litigation. But again, Judge, the problem with that is that, and that's like blue penciling covenants not to compete. Effectively, that's what this would be. It would be, we're going to now edit the document on appeal on something that we didn't ask the district court to do on summary judgment. We're going to edit it to make it legal. And all of the cases dealing with severability, virtually I think all of them that we cited, had severability provisions in them. And the courts have found that that is not enough, that we look to severability on this narrower scale because it's bad public policy. This contract, it's unusual that a contract would have a provision that is declared by the legislature to be void. It's an extreme situation. And so to then allow a party to put it all together in one sentence, and again, not a single court anywhere. They have not cited a single opinion anywhere in the history of the jurisprudence of the United States from any court where a court would rewrite by striking a single word. But normally a severability provision just has language that says you can sever a provision. But here you have, and you haven't really answered Judge Rosenbaum's question about a portion of a provision. I mean, that's unusual language that you guys chose to use. Well, again, I think at most what that would justify would be striking a sentence within the provision, not striking words within it. The way that the parties drafted the indemnification provision, the intent, and as Barton Malow, that case, recognized, the intent was that they're bound up in one another. They aren't separate from one another in the context of the agreement. And so if any portion of that sentence is void, the entire sentence is void, irrespective of any portion of a provision. If a provision is void or illegal, and by striking one word, it's no longer void or illegal, then wouldn't that be the appropriate way to handle it? And I would say that every court that has addressed that has said no, including two Georgia courts of appeals that have both applied to Georgia civil affiliation. What are your best cases that you want us to look at? On the severability issue? Yes. That would be SunTrust and A&B Properties and Barton Malow. Those would be the principal cases on that point, Judge. But Barlow, the last one, that's a Florida case. It is, Judge, yes. But the other two are Georgia cases. Correct. Interpreting the Georgia civil code, which applies to severability. So there's actually a civil code provision that governs severability under Georgia law. Thank you, Mr. Helms. Mr. Owitso-Rooder, you have three minutes. Thank you, Your Honor. I'm going to try to be very brief and address a couple of the questions that I heard the panel asking. Mr. Helms, specifically Barton Malow, the case that he referred to as being the one that best supports his argument. The holding in Barton Malow is as follows. We see nothing in this language talking about the language of the indemnity and defense provision. That indicates that the parties intended the duty to defend to be severable from the remainder of the duties in the indemnity provision. The biggest distinction between Barton Malow and what we've got here is that our section 9.1 has a clear intent for those two duties to be treated differently. Not only is the clear intent evidenced by the last sentence of paragraph 9.1, the sole negligence exclusion. Everybody treated it that way. If they can't be severable, you can't stay one part of the case based upon the duty to defend and let the other one go on. It's an impossibility. So they're actually arguing for an impossibility here. He talked repeatedly about having to sever a sentence or a word from these provisions in order to make them not violative of Georgia public policy. They're requesting that you sever the last sentence of 9.1 from the rest of this provision. They are requesting that you do the exact same thing that they say you can't do. Well, they're effectively requesting that we strike all of 9.1. Well, that's correct. And I guess maybe the proper way to say it, they're requesting that you ignore the last sentence of 9.1. Let me ask you a question about their forfeiture argument. What is your response to that, that you didn't raise this argument about severability before now, basically? Well, we did. The biggest thing that I would tell this court is that we did raise the argument during summary judgment. The appellee in this case wants to take an overly narrow view of when things can be raised and what briefing papers they can be raised. None of the cases cited by USIC says that you have to raise in the, quote, unquote, initial briefing papers all the issues that the district court is to consider. We raised the issue of severability. We raised the issue of the stay. Why don't you give us a cite to the record to help us out? Yeah, that'd be great. That's okay. Yeah, that would be great. No, I apologize. I don't have the document number. That's okay. But it was our objection to the proposed order that was submitted by the appellee in this particular case. All of those arguments were raised in there. The objection to the proposed order before the district court entered it? Yes, exactly. So what happened at the end of the hearing, the district court requested that USIC prepare a proposed order and present it to us for our review. They did that. We reviewed it, and that's when we know it away. They've really overreached what they can do here because now they're asking to dismiss a claim that was stayed, which you can't do. So you filed objections with the court? We did. We filed objections to the proposed order. I apologize for interrupting. And the district court, more importantly, said in their final order on September 2nd— Right, and your colleague, I guess, is arguing that those objections are what told, I guess, would have turned it into, or I guess told it if we were going to count the March 2019 order as the final one. Right. It's actually what the 11th Circuit has already decided, that those objections serve as essentially a motion for reconsideration. But more importantly, the district court themselves stated in their order that they read and understood and appreciated the briefings that were done after the hearing on summary judgment. And even more importantly, USIC had the opportunity to provide their own briefing in response to the fact that these things were not severable. To your objections? Yes, to our objections. So it was fully briefed. The district court said that they read and relied upon it when they provided this September 2nd, 2019 order. And there is no case out there that says you have to confine arguments to certain briefings. If it's presented to the district court, they have the opportunity to review it. More importantly, if it's presented to the other side, they have an opportunity to argue against it. It is not a forfeiture. It's not a waiver. That's what all the case law says. Thank you, counsel. Thank you. Mr. Thoman, you have one minute. All right. Thank you, counsel. Thank you. All right. Our next case is Georgia Atlas v. Executive Director of the Georgia Access Center.